IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2009 Session

## GRAPEVINE TRUCKING, LLC v. CAROLINA CASUALTY INSURANCE COMPANY, ET AL.

**Appeal from the Circuit Court for Bledsoe County**
**No. 4121      Buddy D. Perry, Judge**

_____

**No. E2008-01362-COA-R3-CV - Filed October 29, 2009**

_____

Grapevine Trucking, LLC ("Grapevine") sued Carolina Casualty Insurance Company ("Carolina Casualty") and American Southern Insurance Company ("American Southern Insurance") alleging breach of insurance contracts. The Trial Court granted Carolina Casualty summary judgment dismissing them from the suit. The Trial Court also granted Grapevine partial summary judgment finding that the theft of a truck and trailer covered by Grapevine's policy with American Southern Insurance had occurred and that American Southern Insurance was liable. The issue of damages was tried, and the Trial Court entered its order finding and holding, *inter alia*, that the combined value of the stolen truck and trailer was $53,000 and that Grapevine was entitled to a judgment against American Southern Insurance for $53,000, plus state sales tax on Grapevine's loss in the amount of $3,710. American Southern Insurance appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

Christopher D. Heagerty and Lisa J. Hall, Knoxville, Tennessee for the Appellant, American Southern Insurance Company.

M. Keith Davis, Dunlap, Tennessee for the Appellee, Grapevine Trucking, LLC.

# OPINION

## Background

In May of 2004, Grapevine entered into a contract with its employee Randy L. Crane for Mr. Crane to lease/purchase a 1999 Kenworth W900 truck ("Truck") and a Wabash trailer ("Trailer") from Grapevine for $52,500 plus interest. The contract between Grapevine and Mr. Crane provided that if Mr. Crane became thirty days in arrears, Grapevine could terminate the agreement. By letter dated January 12, 2005, Grapevine notified Mr. Crane that it was terminating the agreement due, in part, to Mr. Crane's non-payment under the contract. Mr. Crane refused to return the Truck and Trailer to Grapevine. In March of 2005, Grapevine swore out a warrant for Mr. Crane's arrest for theft of the Truck and Trailer. Grapevine also sued Mr. Crane seeking to regain possession of the Truck and Trailer, and in March of 2005, the Circuit Court for Bledsoe County entered an order awarding Grapevine permanent possession of the Truck and Trailer. However, Mr. Crane still evaded returning the Truck and Trailer to Grapevine, and Grapevine was unable to repossess the Truck and Trailer. Grapevine then sought to recover for theft of the Truck and Trailer under its insurance policies with Carolina Casualty and American Southern Insurance. Carolina Casualty and American Southern Insurance both declined to pay under their policies, and Grapevine sued for breach of its insurance policies.

Both Carolina Casualty and American Southern Insurance filed motions for summary judgment. Carolina Casualty asserted that its policy with Grapevine did not provide coverage for loss due to theft. American Southern Insurance asserted that it was not liable because the loss involved a civil matter between Grapevine and Mr. Crane, not a theft covered by its policy. Grapevine filed a motion for summary judgment against American Southern Insurance on the issue of whether there was a theft of the Truck and Trailer under its policy with American Southern Insurance. After a hearing, the Trial Court entered an order July 21, 2006 finding and holding, *inter alia*:

> [Grapevine's] first issue for summary judgment is whether the loss sustained by [Grapevine] is covered by its insurance policy with [American Southern Insurance]. The parties concede that the insurance policy includes coverage for theft. However, the insurance policy does not define the term theft. The statutory definition of theft is as follows: "(a) person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. 39-14-103 (1991). The statutory definition of theft also includes fraudulent breach of trust, which involves an authorized taking of property followed by a wrongful appropriation of the property. *State v. Silberman*, 644 S.W.2d 410 (Tenn. Crim. App. 1982).
>
> In May of 2004, [Grapevine] entered into a lease/purchase agreement with its employee, Randy Crane ("Mr. Crane"). Said lease was for the purchase of a tractor and trailer. This lease agreement contained a clause stating that the lease would terminate if Mr. Crane became more than 30 days in arrear of his payments. On January 12, 2005, [Grapevine] notified Mr. Crane that the lease was terminated due

-2-

to non-payment. Subsequently, [Grapevine] made attempts to have the property returned and commenced both criminal and civil actions against Mr. Crane. Further, Mr. Crane told an [American Southern Insurance] investigator that he did in fact have [Grapevine's] property and was storing said property in a safe place. [American Southern Insurance's] insurance policy with [Grapevine] includes coverage for loss by theft. There is no dispute in this case that a theft did occur. Therefore, [Grapevine's] Motion for Summary Judgment is GRANTED.

The second issue in this case is whether [Grapevine's] action is civil in nature, and therefore, between [Grapevine] and Mr. Crane only, relieving [American Southern Insurance] from liability. As declared previously, [Grapevine] did lose property due to a theft. Though [Grapevine] filed a civil suit against Mr. Crane, he was unable to successfully recover the stolen property. [Grapevine's] insurance policy with [American Southern Insurance] provides coverage for loss by theft. Thus, [American Southern Insurance's] Motion for Summary Judgment is DENIED.

Next, [Carolina Casualty] contends that [Grapevine's] insurance policy with [Carolina Casualty] does not cover loss by theft. [Grapevine] concedes that there is no coverage for theft under this policy. Thus, this Motion for Summary Judgment is GRANTED.

The case proceeded to trial on the issue of damages as to American Southern Insurance. At trial, James Canavan testified for Grapevine. Mr. Canavan and his wife, Ann, are the members of Grapevine Trucking, LLC. Mr. Canavan is Grapevine's president, and he deals with maintenance on the trucks. Mrs. Canavan dispatches trucks, arranges loads, and handles the paperwork.

Mr. Canavan testified that at the time Grapevine contracted with Mr. Crane: "The truck was in excellent condition. I had already put a completely new motor in the truck the prior year rebuilt by Cummings. It had a warranty on the motor. Everything else had been checked and it was in operating - - good operating condition." Mr. Canavan testified that the Trailer "was in excellent shape." Grapevine purchased the Truck new in 1999 and purchased the Trailer when it was one year old. Mr. Canavan testified that after Grapevine received the Circuit Court's order awarding it permanent possession of the Truck and Trailer, Grapevine attempted to execute on that order but was unsuccessful in regaining possession of the Truck and Trailer.

Mr. Canavan testified that in his opinion the fair market value for the Truck at the time Grapevine contracted with Mr. Crane was "over $52,000," and for the Trailer "over 17." Mr. Canavan explained why Grapevine contracted to sell both to Mr. Crane for $52,500 stating:

The reason we sold it a little less was, it secured an employee for three years. It also gave us interest on the money. And we would have made a profit off of the working of the truck for these three years. Because he was obligated to keep the truck in our control or employ.

-3-

When asked for his opinion of the value of the Truck and Trailer as of February of 2005, just after Grapevine terminated the agreement, Mr. Canavan stated: "Approximately $55,000" for both. Grapevine's insurance policy with American Southern Insurance insured the Truck for $35,000, and the Trailer for $21,000. American Southern Insurance never notified Grapevine that the Truck and Trailer were over-insured and never refunded any premium to Grapevine for overpayment. Mr. Canavan testified that the insurance premium was based upon the values of the trucks and trailers insured under the policy.[1] Mr. Canavan stated that prior to the theft, the Truck and Trailer were generating gross income of approximately $14,000 per month. When asked, Mr. Canavan admitted that he had testified previously that the value of the Truck at the time of the loss was $44,000 and the value of the Trailer was $26,500.

After trial, the Trial Court entered its order on March 19, 2008 finding and holding, *inter alia*:

> The Court takes notice of the fact that, at the time that they were stolen, the tractor was six (6) years old and the trailer was seven (7) years old. It is undisputed that, as of February 18, 2004, (approximately one year prior to the theft) [American Southern Insurance] agreed to insure the tractor at a value of $35,000.00 and the trailer at a value of $21,000.00. The Court further finds that, on May 1, 2004, [Grapevine] entered into a contract with Randy Crane for the lease/purchase of these items at a price of $52,500.00. The Court further finds that [Grapevine] sold these items to Mr. Crane at less than their fair market value so as to assure that [Grapevine] would have a driver for the next three (3) years during which time [Grapevine] would be receiving income from the operation of the tractor and trailer. The Court finds this explanation to be credible and a reasonable business decision. The Court further finds that James Canavan, in his capacity as the President of [Grapevine] offered his opinion that, at the time that they were stolen, the combined fair market value of the subject tractor and trailer was $55,000.00. The Court takes judicial notice that the value of the tractor and trailer would decrease between February 18, 2004 (the time that the policy was issued) and February 9, 2005 (the date of the Plaintiff's loss of the subject tractor and trailer). However, given the fact that these items were five (5) and six (6) years old as of the date of their loss, the Court agrees with the opinion of James Canavan that their value was not significantly lower. As a result, the Court finds that the combined value of these items as of the date of their loss was fifty-three thousand dollars ($53,000.00).

> The Court further finds that the policy of insurance at issue in this cause provided that [American Southern Insurance] would be responsible for the sales tax on the losses which they paid. This Court takes judicial notice of T.C.A. § 67-6-202 that the applicable state sales tax rate is seven percent (7.00%). As a result, the Court finds that [American Southern Insurance] should be required to pay an additional

---

[1] Grapevine had several trucks and trailers insured with American Southern Insurance under the policy at issue in this case.

three thousand seven hundred ten dollars ($3,710.00) which represents the state sales tax on [Grapevine's] loss.  It is therefore

ORDERED, ADJUDGED AND DECREED that [Grapevine] shall be entitled to a judgment against [American Southern Insurance] in the amount of fifty-three thousand dollars ($53,000.00) as compensation for the loss of its tractor and trailer due to theft which coverage was provided under the terms of the policy of insurance issued by [American Southern Insurance].  It is further

ORDERED, ADJUDGED AND DECREED that, in addition to damages for the loss of its tractor and trailer, [Grapevine] is also entitled to a judgment against [American Southern Insurance] in the amount of three thousand seven hundred ten dollars ($3,710.00) which represents the applicable state sales tax covered by the policy of insurance issued by [American Southern Insurance].

American Southern Insurance appeals to this Court.

**Discussion**

Although not stated exactly as such, American Southern Insurance raises two issues on appeal: 1) whether the Trial Court erred in holding that there was a theft of the Truck and Trailer and granting partial summary judgment in favor of Grapevine; and, 2) whether Grapevine sufficiently proved its damages at trial.

We first address whether the Trial Court erred in granting partial summary judgment to Grapevine.  In *Blair v. West Town Mall*, our Supreme Court reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Blair v. West Town Mall,* 130 S.W.3d 761 (Tenn. 2004).  In *Blair*, the Court stated:

The standards governing an appellate court's review of a motion for summary judgment are well settled.  Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown,* 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples*, 15 S.W.3d at 88.

\* \* \*

When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set

forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

>        To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair,* 130 S.W.3d at 763, 767 (quoting *Staples*, 15 S.W. 3d at 88-89) (citations omitted)).

Our Supreme Court also has provided instruction regarding assessing the evidence when dealing with a motion for summary judgment stating:

>    The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000).

The Trial Court interpreted the insurance policy between Grapevine and American Southern Insurance and found that a theft had occurred under the policy. As this Court explained in *Kafozi v. Windward*:

>    In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the

agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id.* Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id.*

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698-99 (Tenn. Ct. App. 2005).

The parties do not dispute that the insurance contract at issue clearly and unambiguously provides coverage for theft. As the contract in this case is clear and unambiguous, the interpretation of the contract is a question of law leaving no genuine factual issue for a jury to decide. *See Kafozi*, 184 S.W.3d at 698 (stating: "A determination of the intention of the parties 'is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide.'" (quoting *Planters Gin Co.*, 78 S.W.3d at 890)).

Nor do the parties dispute that the term 'theft' is not defined in the contract. Our General Assembly, however, has defined theft in Tenn. Code Ann. § 39-14-103, which provides that: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2006).

American Southern Insurance argues on appeal that no theft of the Truck and Trailer occurred because Mr. Crane was in lawful possession of the Truck and Trailer and "retained the subject vehicle under an honest claim of right." American Southern Insurance is mistaken. Although Mr. Crane was in lawful possession of the Truck and Trailer at one time, he ceased to be in lawful possession no later than when the Circuit Court entered an order granting Grapevine permanent possession of the Truck and Trailer and Mr. Crane refused to return the Truck and Trailer to Grapevine. Grapevine sued Mr. Crane in Circuit Court with regard to the possession of the Truck and Trailer, and an order was entered in that suit granting Grapevine permanent possession of the Truck and Trailer. Mr. Crane had an opportunity to establish his rights to the Truck and Trailer, if any, in that lawsuit. Once the Circuit Court's order granting Grapevine permanent possession of the Truck and Trailer became a final order, Mr. Crane no longer had any rights to the Truck and Trailer.

It cannot be said accurately that Mr. Crane "retained the subject vehicle under an honest claim of right." There is no legitimate dispute that Mr. Crane deprived Grapevine of its Truck and Trailer by continuing to exercise control over the Truck and Trailer without Grapevine's effective consent after the Circuit Court's order became final. A theft covered by the American Southern Insurance policy occurred when Grapevine was granted permanent possession of the Truck and Trailer by the Circuit Court and Mr. Crane refused to return the Truck and Trailer to Grapevine. As there is no dispute that the policy at issue provides coverage for theft, and the Trial Court correctly found that a theft had occurred, we affirm the grant of partial summary judgment to Grapevine.

We next address whether Grapevine sufficiently proved its damages at trial. Our review of this issue is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

American Southern Insurance argues on appeal that because Mr. Canavan's testimony given at different times assigned differing values to the Truck and Trailer, his testimony is contradictory and should be disregarded, and that without Mr. Canavan's testimony there is no evidence of the value of the Truck and Trailer. We begin by noting that the Trial Court found Mr. Canavan to be credible with regard to his explanation about why the Truck and Trailer were sold to Mr. Crane for less than their value, and credited to some extent Mr. Canavan's testimony with regard to the values. The lease/purchase agreement between Grapevine and Mr. Crane is evidence of the value of the Truck and Trailer. This is even more apparent given the Trial Court's determination that Mr. Canavan was credible concerning his testimony about the sales price to Mr. Crane.

Furthermore, even if Mr. Canavan's testimony is completely disregarded, American Southern Insurance is incorrect in its assertion that there is no other evidence of value. The insurance policy itself provides at least some evidence of the value of the Truck and Trailer. The evidence shows that the policy valued the Truck at $35,000 and the Trailer at $21,000. The evidence shows that the Truck and Trailer were insured under the policy for approximately one year before the theft. Further, the evidence shows that the policy premium was based upon the values assigned to the vehicles insured under the policy, i.e., the higher the value the higher the premium. American Southern Insurance never notified Grapevine that the Truck and Trailer were over-insured, and never refunded any premium to Grapevine for overpayment.

Finally, American Southern Insurance produced no evidence which would tend to show that the Truck and Trailer were not worth the values shown by the evidence and as found by the Trial Court. The record is devoid of any evidence disputing either Mr. Canavan's asserted values, the value as shown in the lease/purchase agreement, or the values assigned by the insurance policy. Given all this, we cannot say that the evidence preponderates against the Trial Court's findings with regard to the value of the Truck and Trailer.

American Southern Insurance also raises a public policy argument on appeal asserting that if this Court were "to decide in favor of [Grapevine], those in the business of selling vehicles in the State of Tennessee would be encouraged to file frivolous theft claims under their respective insurance policies in lieu of pursuing lawful repossession of such vehicles." In the case now before us, Grapevine did exhaust all reasonable attempts to lawfully repossess the Truck and Trailer before filing the claim with American Southern Insurance. Grapevine sued Mr. Crane in Circuit Court and obtained an order granting Grapevine permanent possession of the Truck and Trailer. Grapevine attempted to execute on the order granting it permanent possession of the Truck and Trailer, and Grapevine also swore out a warrant for Mr. Crane's arrest for the theft of the Truck and Trailer.

We are at a loss as to what else Grapevine could have lawfully done to repossess its Truck and Trailer. Grapevine did pursue lawful repossession of its Truck and Trailer. It is Mr. Crane's continued exercise of control over the Truck and Trailer despite Grapevine having obtained an order granting Grapevine permanent possession of the Truck and Trailer which resulted in there being a "theft" under Grapevine's insurance policy with American Southern Insurance. Clearly, Grapevine did not file a frivolous theft claim with its insurer. As such, we find American Southern Insurance's public policy argument wholly inapplicable given the facts of this case.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, American Southern Insurance Company, and its surety.

_____
D. MICHAEL SWINEY, JUDGE